UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENIFFER AGUILAR ALVARADO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LIBERTY SURPLUS INSURANCE CORP., ) <br> ) <br> Defendant. ) | No. 24 C 2054 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

After Defendant Liberty Surplus Insurance Corporation ("Liberty Surplus") denied Plaintiff Jeniffer Aguilar Alvarado's demand for underinsured motorist coverage because the governing policy did not include such coverage, Aguilar Alvarado brought this action in the Circuit Court of Lake County. Aguilar Alvarado seeks a declaratory judgment that the insurance policy should include underinsured motorist coverage equal to the policy's liability limits. Liberty Surplus removed the action to this Court and has moved to dismiss Aguilar Alvarado's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Illinois law did not require Liberty Surplus to provide underinsured motorist coverage, the Court grants Liberty Surplus' motion to dismiss. The Court dismisses Counts I, II, and IV of Aguilar Alvarado's amended complaint with prejudice and dismisses Count III without prejudice.

**BACKGROUND[1]**

**I. Turo's Insurance Policy with Liberty Surplus**

Turo, Inc. ("Turo") is a peer-to-peer car sharing company that facilitates customers' leasing of cars directly from car owners for a short rental period. Since 2016, Turo has

---

[1] The Court takes the facts in the background section from Aguilar Alvarado's amended complaint and presumes them to be true for the purpose of resolving Liberty Surplus' motion to dismiss. *See Phillips v.*

maintained a car insurance policy with Liberty Surplus. When it first entered into its policy with Liberty Surplus in 2016, Turo received an Uninsured/Underinsured Motorist Bodily Injury Coverage and Limit Options Illinois Form (the "2016 Consent Form"). Turo elected $50,000 of the Combined Single Limit ("CSL") of uninsured motorist ("UM") coverage for bodily injury and declined to offer UM coverage for property damage. The $50,000 CSL did not include coverage for underinsured motorists ("UIM").

Turo renewed its policy with Liberty Surplus on December 19, 2019 (the "Policy"). The Policy establishes a minimum CSL financial responsibility requirement of $70,000 for "travelers" and a $1,000,000 limit for "employees" in Illinois. Doc. 8 at 32. The Policy defines "traveler" as "the individual that is recorded in the Turo Reservation System as the responsible driver for the 'rental period,' but does not include any driver using an 'owner-provided insurance vehicle.'" Doc. 19-1 at 422. By contrast an employee "includes a 'leased worker'" who is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business." *Id.* at 458.

The Policy also contains an Uninsured/Underinsured Motorist Insurance Schedule (the "Schedule"), which indicates that the Policy provides $50,000 in UM bodily injury coverage per accident. It does not list any UIM coverage. The Illinois Uninsured Motorist Coverage endorsement (the "Endorsement") modifies the Schedule and clarifies that the UM limit of $50,000 of bodily injury coverage per accident will be applied "to first provide the separate limits required by the Illinois Safety Responsibility Law as follows: $25,000 for 'bodily injury'

---

*Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

to any one person caused by any one 'accident'; and $50,000 for 'bodily injury' to two or more persons caused by any one 'accident.'" *Id.* at 228. The Endorsement further states that it "will not change our total limit of liability." *Id.*

## II. Aguilar Alvarado's Accident and Subsequent Litigation

On December 22, 2019, Aguilar Alvarado rented a car through Turo, acquiring insurance through Turo's Policy with Liberty Surplus. Later that day, Aguilar Alvarado got into a minor car accident with Maria Velasco. When Aguilar Alvarado stepped out of her car to discuss the accident with Velasco, a third driver, Ana Flores, drunkenly drove into Velasco's car. The impact from Flores hitting Velasco's car caused Aguilar Alvarado to be thrown in the air and sustain serious injuries. Flores' insurance paid its full limit of $25,000 to Aguilar Alvarado.

Aguilar Alvarado subsequently made a demand for UIM arbitration with Liberty Surplus. Liberty Surplus responded that the Policy provided $0 in UIM coverage because Turo had rejected that coverage. Aguilar Alvarado and Liberty Surplus then engaged in arbitration for the next several months, which ultimately failed.

On November 9, 2023, Aguilar Alvarado sued Liberty Surplus in the Circuit Court of Lake County seeking a declaration that the Policy violates Illinois law by not providing UIM coverage and requesting reformation of the Policy to comply with Illinois law (Counts I and IV). She also seeks a declaration that the Policy fails to comply with the 2016 Consent Form (Count II) and acknowledgment that the Policy contained material changes from the 2016 Consent Form (Count III). Liberty Surplus removed the action to this Court and now moves to dismiss Aguilar Alvarado's complaint.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.    The Policy's Compliance with the Illinois Vehicle Code (Counts I and IV)**

Counts I and IV of the amended complaint assert that the Policy violates Illinois law by failing to include UIM coverage and seek reformation of the Policy to include such coverage. Liberty Surplus argues that the Court should dismiss the amended complaint because Illinois law does not require Liberty Surplus to include UIM coverage given that the Policy's UM coverage does not exceed Illinois' statutory liability limits.

The Illinois Insurance Code states, in relevant part,

> On or after July 1, 1983, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this

4

> State unless underinsured motorist coverage is included in such policy in an amount equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7-203 of the Illinois Vehicle Code.

215 Ill. Comp. Stat. 5/143a-2(4).  Section 7-203 requires an insurance policy to provide "a limit of not less than $25,000 for bodily injury to or death of any one person in any one motor vehicle accident," "a limit of not less than $50,000 for bodily injury or death of two or more persons in any one motor vehicle accident," and "a limit of not less than $20,000 for injury to or destruction of property."  625 Ill. Comp. Stat. 5/7-203.  Interpreting these provisions, the Illinois Appellate Court recently emphasized that section 143a-2(4) "requires underinsured motorist coverage to be included in a liability policy in an amount equal to the amount of uninsured motorist coverage provided in the policy *only* 'where such uninsured motorist coverage exceeds the limits set forth in Section 7-203 of the Illinois Vehicle Code.'"  *Scott v. Am. All. Cas. Co.*, 2024 IL App (4th) 231305, ¶ 22.

Aguilar Alvarado alleges that Liberty Surplus needed to include UIM coverage because the Policy provided $50,000 per person in UM bodily injury coverage.  However, Aguilar Alvarado incorrectly reads the Policy's coverage amounts.  The $50,000 amount listed in the Schedule and on which Aguilar Alvarado relies establishes the UM limit per accident, not per person.  And as the Endorsement explains, the Policy provides UM coverage in Illinois as follows: "$25,000 for 'bodily injury' to any one person caused by any one 'accident'; and $50,000 for 'bodily injury' to two or more person caused by any one 'accident.'"  Doc. 19-1 at 228.  Accordingly, the Policy has a limit of $25,000 for bodily injury to any one person per accident and $50,000 for bodily injury for two or more persons per accident.  On its face, therefore, the Policy meets, but does not exceed, the statutory minimum coverage provided by

5

Section 7-203. This means that Illinois law does not require Liberty Surplus to include UIM coverage that meets the Policy's UM bodily injury amounts. *Scott*, 2024 IL App (4th) 231305, ¶ 22 ("[W]hen a policy provides uninsured motorist coverage with the statutory minimum limits, automatic inclusion of underinsured motorist coverage in an equal amount is not required under section 143a-2(4) of the Insurance Code."); *cf. Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 2018 IL 122558, ¶ 33 ("[S]ection 143a–2 of the Insurance Code is plain and unambiguous in mandating that where uninsured motorist coverage in a policy exceeds the limits set forth in section 7–203 of the Financial Responsibility Law, each policy must include underinsured motorist coverage in an amount equal to the total amount of uninsured motorist coverage."). Because Illinois law does not require insurers to provide UIM coverage when the policy's UM coverage does not exceed the UM limits set forth in Section 7-203, Aguilar Alvarado's claim for reformation of the Policy to increase the UIM coverage to match the Policy's liability limits fails. Accordingly, the Court dismisses Count I of Aguilar Alvarado's amended complaint.

Liberty Surplus argues that the same reasoning requires the Court to dismiss Count IV, in which Aguilar Alvarado requests declaratory relief that Turo's rejection of UIM coverage on the 2016 Consent Form was void *ab initio* because Illinois law requires UIM coverage. As stated above, Illinois law only requires UIM coverage when the UM coverage exceeds Illinois' statutory minimum limits. *Scott*, 2024 IL App (4th) 231305, ¶ 22. Here, because Liberty Surplus' UM coverage meets, but does not exceed, the Section 7-203 minimum, Liberty Surplus did not need to provide UIM coverage. *Id.* Aguilar Alvarado argues that Turo could not have rejected UIM coverage because "the underinsured motorist provision does not include a right of rejection." *Thounsavath*, 2018 IL 122558, ¶ 20. However, this only applies where the law otherwise requires UIM coverage—in other words, where the policy provides UM coverage

above the minimum limit provided in Section 7-203. *Id.* ¶ 34 (finding that when the liability limits exceed those required by Section 7-203, an insurer "was required to include uninsured motorist coverage in those amounts in plaintiff's policies unless plaintiff specifically rejected the higher coverage amounts"). Here, Turo explicitly rejected higher UM coverage amounts and chose to maintain the minimum amount of UM coverage as required by Illinois law. Accordingly, Turo's request for UIM coverage of $0 is not void *ab initio*, and so the Court also dismisses Count IV.

**II.   Conformity of the Policy with the 2016 Consent Form (Counts II and III)**

Counts II and III of the amended complaint seek reformation of the Policy because, as Aguilar Alvarado alleges, the Policy did not accurately reflect the 2016 Consent Form and instead contained material changes from the 2016 Consent Form. Liberty Surplus argues that the Policy conformed with the 2016 Consent Form and did not have any material changes, so the Court has no need to reform the Policy.

The Court begins with Aguilar Alvarado's allegation that the Policy contradicts the 2016 Consent Form. To support her assertion, Aguilar Alvarado contends that the Policy provided a $70,000 minimum of UM bodily injury coverage, a $50,000 minimum of UIM coverage, and a $20,000 minimum of UM/UIM coverage of property damage, which she contends increased from Turo's elections on the 2016 Consent Form. Doc. 1-1 at 52. But while the Court must take well-pleaded facts as true at the motion to dismiss stage, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998); *see also Esco v. City of Chicago*, No. 23-1304, 2024 WL 3333989, at *3 (7th Cir. July 9, 2024) ("Although a district court, in a motion to dismiss, must take the

7

plaintiff's well-pleaded facts as true, when an exhibit, including a video exhibit, 'incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.'" (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). Here, comparing Aguilar Alvarado's allegations with the exhibits she attaches to her amended complaint—namely, Exhibit F, the 2016 Consent Form, and Exhibit G, the Policy—causes her claim to fall apart. Pursuant to the Policy's actual terms, provided in part in Exhibit G to the amended complaint and attached in full to Aguilar Alvarado's response to the motion to dismiss, it offers $70,000 in liability coverage for travelers and $50,000 in UM bodily injury coverage per accident to be distributed according to the Endorsement. The Policy does not provide UIM coverage or UM coverage for property damage. These amounts conform with Turo's elections on the 2016 Consent Form of $50,000 of UM bodily injury coverage and no UIM or UM property damage coverage. Accordingly, the exhibits belie Aguilar Alvarado's contention that the Policy contradicts the 2016 Consent Form, and her request to conform the Policy to comply with the 2016 Consent Form has no merit.

For similar reasons, Aguilar Alvarado has not alleged that Liberty Surplus made material changes to the Policy in 2019 from the 2016 Consent Form such that Turo would have needed to explicitly reject additional UM coverage at the time of the 2019 renewal. Illinois insurance law permits an insured to reject additional UM coverage in excess of the limits set forth in Section 7-203 by making a written request. 215 Ill. Comp. Stat. 5/143a-2(4)(2). The parties agree that Turo made such a written request when it signed the original policy with Liberty Surplus in 2016 through the 2016 Consent Form. Where, as here, the insured has properly rejected the additional UM coverage through a written request, "the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in

8

excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." *Id.* But, when a material change has been made to an insurance policy, "the insurer must treat the changed policy as a new policy, and must include UM coverage equal to liability coverage unless it obtains from the insured a signed or initialed election specifically declining such coverage." *Billingsley v. Millers Classified Ins. Co.,* 2016 IL App (3d) 140558-U, ¶ 24. Aguilar Alvarado alleges that the coverage amounts for the UM bodily injury, UIM, and UM property damage coverage amounts increased when Turo obtained the Policy in 2019, thus comprising a material change that required Turo to make another written request for a lower UM coverage amount. However, Aguilar Alvarado again relies only on the 2016 Consent Form to support her allegations that the Policy contained material changes. And as the Court has already determined, the Policy does not reflect differences in coverage from Turo's elections on the 2016 Consent Form. As such, the Court finds that Aguilar Alvarado failed to allege a material change that would have required Turo to reject additional UM coverage in writing. *See Alshwaiyat v. Am. Serv. Ins. Co.*, 2013 IL App (1st) 123222, ¶ 50 (finding that where there were no "substantial changes in the terms of the new policy being issued," the insured did not need to sign a new consent form to reject UM coverage above the Section 7-203 limits). Accordingly, the Court dismisses Counts II and III of the amended complaint.

### III. Dismissal With or Without Prejudice

Having found that Aguilar Alvarado has not sufficiently pleaded any of her claims, the Court must determine whether to dismiss her complaint with or without prejudice. Although courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago &*

*Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss). Here, providing Aguilar Alvarado with another opportunity to amend her complaint would be futile as to her request for the Court to reform the Policy to comply with Illinois law and to reform the Policy to comply with the 2016 Consent Form because she cannot correct the defects the Court has identified with her claims. Accordingly, the Court dismisses Counts I, II, and IV of her amended complaint with prejudice.

That said, the Court does not dismiss Count III with prejudice. While the allegations of material change that Aguilar Alvarado presents in her amended complaint do not provide a basis for finding a material change to the Policy, the Court recognizes that the Policy may contain other changes from the 2016 policy such that Turo would have needed to execute a written rejection of UM coverage in excess of the limits provided by Section 7-203. *See, e.g.*, *Nicholson v. State Farm Mut. Auto. Ins. Co.*, 409 Ill. App. 3d 282, 292 (2010) (finding that "a change in the level of coverage, with its attendant change in the premium cost, is a material change that results in a new policy rather than a mere continuation of the old policy" would require a written rejection of increased UM coverage). The Court therefore grants Aguilar Alvarado leave to amend her complaint only to the extent that she can identify a material change between the 2016 policy and the Policy that would have required a written rejection of additional UM coverage.

## CONCLUSION

The Court grants Liberty Surplus' motion to dismiss [9]. The Court dismisses Counts I, II, and IV of the amended complaint with prejudice. The Court dismisses Count III of the

amended complaint without prejudice. If Aguilar Alvarado chooses to amend that claim, she must file a second amended complaint by September 6, 2024.

Dated: August 6, 2024

                                                                                                   SARA L. ELLIS
                                                                                                   United States District Judge