**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENIFFER AGUILAR ALVARADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 2054 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| LIBERTY SURPLUS INSURANCE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

After Defendant Liberty Surplus Insurance Corporation ("Liberty Surplus") denied Plaintiff Jeniffer Aguilar Alvarado's demand for underinsured motorist coverage, Aguilar Alvarado brought this action. In August 2024, this Court dismissed Aguilar Alvarado's complaint for failing to state a claim, but granted her leave to amend and replead her claim that a material change in the insurance policy caused her loss to be covered by Liberty Surplus' policy. Aguilar Alvarado filed an amended complaint, and now, Liberty Surplus moves again to dismiss Aguilar Alvarado's amended complaint. Because Aguilar Alvarado's amended complaint states a plausible claim, the Court denies Liberty Surplus' motion to dismiss [45].

## BACKGROUND[1]

### I.    Turo's Insurance Policy with Liberty Surplus

Turo, Inc. ("Turo") is a peer-to-peer car sharing company that facilitates customers'

leasing of cars directly from car owners for a rental period.  Liberty Surplus is a New Hampshire

corporation licensed to issue automobile insurance policies in Illinois.  In 2016, Turo obtained a

car insurance policy from Liberty Surplus (the "2016 Policy").  When Turo entered the 2016

Policy, Turo's president signed a "Uninsured/Underinsured Motorist Bodily Injury Coverage and

Limit Options Illinois Form" (the "2016 Consent Form") electing a Combined Single Limit

("CSL") of $50,000 for uninsured motorist ("UM") coverage for bodily injury and declining any

UM property damage coverage.  The $50,000 UM CSL did not include coverage for

underinsured motorists ("UIM").

Turo renewed its car insurance policy with Liberty Surplus on December 19, 2019 (the

"2019 Policy").  When Turo entered the 2019 Policy, it did not execute another writing, like the

2016 Consent Form, rejecting UM coverage.  But the 2019 Policy had a "material change" from

the 2016 Policy.  Doc. 38 at 4.  Specifically, "[t]he [2019] Policy made substantial changes in the

definitions and/or the coverages of insured people."  *Id.*  The 2019 Policy establishes a minimum

CSL financial responsibility requirement of $70,000 for "travelers" and a $1,000,000 limit for

"employees" in Illinois.  Doc. 8 at 32.  The 2019 Policy defines "traveler" as "the individual that

is recorded in the Turo Reservation System as the responsible driver for the 'rental period,' but

---

[1] The Court takes the facts in the background section from Aguilar Alvarado's amended complaint and presumes them to be true for the purpose of resolving Liberty Surplus' motion to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).  Where appropriate, the Court considers facts from outside the complaint. *See Fin. Diuciaries, LLC v. Gannett Co.,* 46 F.4th 654, 663 (7th Cir. 2022) ("[A] court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim."); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit 'in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle h[er] to judgment.'").

does not include any driver using an 'owner-provided insurance vehicle.'" Doc. 19-1 at 422. The 2019 Policy's definition of "employee" "includes a 'leased worker,'" which it defines as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business." *Id.* at 458.

The 2019 Policy also contains an Uninsured/Underinsured Motorists Insurance Schedule (the "Schedule"), which indicates that the 2019 Policy provides $50,000 in UM bodily injury coverage per accident in Illinois. It does not list any UIM coverage in Illinois. Later in the 2019 Policy, the Illinois Uninsured Motorist Coverage endorsement (the "Endorsement") modifies the Schedule and clarifies that the UM limit of $50,000 of bodily injury coverage per accident will be applied "to first provide the separate limits required by the Illinois Safety Responsibility Law as follows: $25,000 for 'bodily injury' to any one person caused by any one 'accident'; and $50,000 for 'bodily injury' to two or more persons caused by any one 'accident.'" *Id.* at 228. The Endorsement further states that it "will not change our total limit of liability." *Id.*

## II. Aguilar Alvarado's Accident and Subsequent Litigation

On December 22, 2019, Aguilar Alvarado rented a car through Turo. While Aguilar Alvarado was driving her rented car, she was involved in a minor car accident with Maria Velasco. After the accident, Aguilar Alvarado and Velasco stepped out of their respective cars and walked north. At that time, a drunk driver, Ana Flores, drove into Velasco's vehicle and the resulting impact threw Aguilar Alvarado through the air. Aguilar Alvarado sustained serious injuries. Flores' insurance paid its full policy limits, $25,000, to Aguilar Alvarado.

After receiving her payment from Flores' insurance, Aguilar Alvarado demanded UIM arbitration from Liberty Surplus. Aguilar Alvarado specifically requested that Liberty Surplus pay her the $1,000,000 provided for "employees" in the 2019 Policy. On June 17, 2020, Liberty

Surplus sent Aguilar Alvarado an email stating that Turo had rejected UIM coverage and only provided UM coverage with a CSL of $50,000. Liberty Surplus also sent Aguilar Alvarado a copy of the 2016 Consent Form. Liberty Surplus concluded that the 2019 Policy did not cover Aguilar Alvarado's loss and denied her claim. The instant lawsuit followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The Illinois Insurance Code requires that insurance policies contain UIM coverage in an amount equal to the UM coverage, where UM coverage exceeds the limits set forth in Section 7-203 of the Illinois Vehicle Code. 215 Ill. Comp. Stat. 5/143a-2(4). Section 7-203 requires an insurance policy to provide "a limit of not less than $25,000 for bodily injury to or death of any one person in any one motor vehicle accident," "a limit of not less than $50,000 for bodily injury or death of two or more persons in any one motor vehicle accident," and "a limit of not less than

4

$20,000 for injury to or destruction of property." 625 Ill. Comp. Stat. 5/7-203. As described in this Court's previous opinion, the 2019 Policy meets but does not exceed the statutory minimum coverage provided by Section 7-203, such that Illinois law did not require Liberty Surplus to include UIM coverage equal to the UM bodily injury amount. Doc. 37 at 5–6.

Further, the Illinois Insurance Code requires that insurance policies provide UM coverage that is equal to the insured's bodily injury liability limits unless specifically rejected in accordance with Section 143a-2(2). 215 Ill. Comp. Stat. 5/143a-2(1). Section 143a-2(2) states that:

> Any named insured or applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code by making a written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written request of limits in excess of those required by law. This election or rejection shall be binding on all persons insured under the policy. In those cases where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage.

215 Ill. Comp. Stat. 5/143a-2(2). Illinois courts have clarified that when the insured and insurer materially change the insurance policy, that change results in a new policy and, as a result, the insurer and insured must execute a new written election declining UM coverage equal to liability coverage. *See Nicholson v. State Farm Mut. Auto. Ins. Co.*, 409 Ill. App. 3d 282, 293–94 (Ill. App. Ct. 2010).[2]

---

[2] While *Nicholson* interpreted an earlier version of the statute, its reasoning applies with equal force in these circumstances. *See Alshwaiyat v. Am. Servs. Ins. Co.*, 2013 IL App (1st) 123222, ¶¶ 47–52 (assessing how *Nicholson* applied in a case with the newer version of the statute, and determining that *Nicholson* did not apply when there was no new insurance policy).

Applying this legal background to this case, Aguilar Alvarado claims UIM coverage under the 2019 Policy. By its terms, the 2019 Policy does not contain UIM coverage, and it does not exceed the Section 7-203 coverage threshold such that the Court should read in UIM coverage that meets the UM bodily injury amount. *See* Doc. 37 at 5–6. However, the Court may read in UIM coverage if a material change exists between the 2016 Policy and 2019 Policy, such that the 2016 Consent Form, which rejected additional UM coverage as required by Section 143a-2(2), does not apply to the 2019 Policy. If the 2016 Consent Form does not cover the 2019 Policy, then Turo did not request UM coverage that was less than its bodily injury liability limits or reject UM coverage in excess of those required by law, and the 2019 Policy's UM coverage might exceed the statutory minimum coverage provided by Section 7-203, such that the 2019 Policy may also provide UIM coverage.

Liberty Surplus argues that Aguilar Alvarado's allegations regarding the existence of a material change between the 2016 Policy and 2019 Policy do not meet the pleading requirements under Federal Rule of Civil Procedure 12(b)(6). In response to Liberty Surplus' argument, Aguilar Alvarado argues that she has sufficiently pleaded a claim because she does not possess the 2016 Policy to compare with the 2019 Policy, and she believes the specifics of the material difference is that "prior to 2018, Turo and its predecessor had policies, including the 2016 Policy that changed between levels of liability coverage by differentiating between 'Owner' and 'Renter.'" Doc. 51 at 3. Aguilar Alvarado states "research into other policies in the industry" informed her position on the specific material differences between the 2016 Policy and 2019 Policy. *Id.*

The Court finds that Aguilar Alvarado has sufficiently pleaded that material differences exist between the 2016 Policy and 2019 Policy. To meet the plausibility standard, "the

6

complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citation omitted). Aguilar Alvarado pleaded in the complaint that "[t]he [2019] Policy made substantial changes in the definitions and/or the coverages of insured people." Doc. 38 at 4. In addition, Aguilar Alvarado was specific in her briefing that she believes the material difference between the 2016 Policy and 2019 Policy is that the 2016 Policy included coverage categories for "owners" and "renters" that are not present in the 2019 Policy, and did not contain the "traveler" and "employee" distinction found in the 2019 Policy. *See Hanna*, 834 F.3d at 779 ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit 'in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle h[er] to judgment.'"). These factual assertions, if accepted as true and in the light most favorable to Aguilar Alvarado, raise a reasonable expectation that discovery of the 2016 Policy will reveal evidence to support Aguilar Alvarado's claim. *See Billingsley v. Millers Classified Ins. Co.*, 2016 IL App (3d) 140558-U, ¶ 24 (describing the sorts of material changes that might suffice to require a new signed election or trigger the need for a contract to contain UM coverage equal to liability coverage).

Liberty Surplus' argument that Aguilar Alvarado lacks sufficient factual support for her allegations fails because, at this phase, Aguilar Alvarado can make allegations based on her best information and belief, as Liberty Surplus possesses the 2016 Policy and has not shared it with her. *See Cothron v. While Castle Sys., Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020) ("[T]he Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." (omission in original) (citation omitted)); *United States ex rel. McGee v. IBM Corp.*,

81 F. Supp. 3d 643, 668 (N.D. Ill. 2015) (explaining that a plaintiff may allege claims based on information and belief, and that the plaintiff does not need to explicitly state in their complaint that their allegations are based on information and belief).

Finally, Liberty Surplus argues that Aguilar Alvarado conflates the 2019 Policy's liability coverage limits with its UM coverage limits and Aguilar Alvarado's assertion that the 2016 Policy contained different defined terms is irrelevant because the "employees" and "travelers" liability coverage limits are not UM coverage limits. However, to the extent Aguilar Alvarado uses the "employees" and "travelers" definition as part of her argument that a material change occurred between the 2016 Policy and 2019 Policy, such that Illinois law requires a new signed election to disclaim UM coverage, those definitions are relevant. A material change occurs based on multiple different kinds of changes to a contract, including changes in the level of coverage, benefit level, or premiums, such that the changed definitions are relevant to the issue of whether a material change occurred. *See Billingsley*, 2016 IL App (3d), ¶ 24. In short, Aguilar Alvarado has stated a plausible claim that the Court permits to continue to discovery.

## CONCLUSION

For the reasons stated above, the Court denies Liberty Surplus' motion to dismiss the amended complaint [45].

Dated: April 15, 2025

_____
SARA L. ELLIS
United States District Judge

8